# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUAN ÁNGEL NAPOUT,<br><br>       Plaintiff,<br>v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S LONDON; AXIS SPECIALTY EUROPE SE,<br><br>       Defendants. | Civ. Action No.<br><br>**DECLARATION OF ROSA TUMIALÁN IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION REQUIRING DEFENDANTS TO TIMELY PAY LEGAL COSTS** |

I, Rosa M. Tumialán, declare and state as follows:

  1.  I am a partner with the law firm of Dykema Gossett PLLC and serve as coverage counsel for Plaintiff Juan Àngel Napout ("Mr. Napout"). I submit this Declaration in support of Mr. Napout's Motion for a Temporary Restraining Order and Preliminary Injunction Requiring Defendants, Certain Underwriters at Lloyd's London and Axis Specialty Europe SE (collectively, "Defendants"), to Timely Pay Legal Costs (the "Motion").[1] I am personally knowledgeable of the matters set forth in this Declaration and, if called upon to do so, I could and would competently testify to the facts set forth below. I am over 18 years of age.

  2.  On May 19, 2016, Mr. Napout requested reimbursement from the Underwriters and advancement of legal costs in connection with the Underlying Action pursuant to their obligations under the Policy. A true and correct copy of the Policy is attached as **Exhibit A**.

  3.  The Underwriters issued a reservation of rights letter on June 10, 2016, requested that Mr. Napout provide certain information, but did not assume his defense at that time.

---

[1] Unless defined herein, capitalized terms follow the defined terms of the Motion.

4. On August 4, 2016, John Pappalardo, Mr. Napout's defense counsel, responded to the Underwriters' June 10, 2016 letter and provided the requested information. A true and correct copy of Mr. Pappalardo's August 4, 2016 letter is attached as **Exhibit B**.

5. The Underwriters failed to respond to Mr. Pappalardo's August 4, 2016 correspondence, and Mr. Napout was required to resubmit his August 2016 materials to them in December 2016. *See* December 1, 2016 email attached as **Exhibit C**.

6. On December 16, 2016, the Underwriters originally denied coverage. As a result, I informed counsel for the Underwriters that Mr. Napout was prepared to file a complaint in this District to recover his legal costs as required by the Policy. I also informed counsel for the Underwriters that Mr. Napout's complaint would seek consequential damages resulting from the Underwriters' failure to honor their duty of good faith and fair dealing.

7. After making multiple requests that Mr. Napout delay filing his complaint, on or around March 7, 2017, counsel for the Underwriters informed me that the Underwriters agreed to reimburse Mr. Napout's legal defense costs (which, at that time, totaled over $6 million), and to fund Mr. Napout's defense going forward, subject to a forthcoming reservation of rights letter.

8. On or around May 5, 2017, the Underwriters' counsel advised that an interim payment of $1 million would be forthcoming.

9. On May 9, 2017, the Underwriters provided their ROR Letter, in which they expressly acknowledged that Mr. Napout qualified as an "Insured Person" under the Policy. A true and correct copy of the Underwriters' ROR Letter is attached as **Exhibit D**.

10. I provided the Underwriters' counsel with the information requested in their ROR Letter by the end of May 2017.

11. On May 30, 2017, along with Mr. Napout's defense counsel, I participated in a conference call with counsel for the Underwriters. During the conference call, Mr. Napout's defense counsel explained the status of the criminal proceedings, that discovery matters involved, *inter alia*, the production of documents in excess of twenty-nine (29) million documents, the pending November 6, 2017 trial date, and that Mr. Napout vehemently denied the allegations and intended to proceed to trial. A summary of this conference call is contained in correspondence dated June 2, 2017 attached as **Exhibit E**.

12. On June 29, 2017, the Underwriters' counsel provided me with additional correspondence seeking information related to Mr. Napout's defense invoices from February to March 2017, which had already been provided to counsel for the Underwriters. A true and correct copy of the Underwriters' June 29, 2017 correspondence is attached as **Exhibit F**.

13. On July 11, 2017, I provided the Underwriters' counsel with an email addressing the final inquiries contained in the Underwriters' June 29, 2017 correspondence.

14. As of August 11, 2017, the Underwriters had not responded to my July 11, 2017 email, and had not advised that any additional documentation was required. Having received neither a response nor the $1.25 million in past defense costs the Underwriters had promised to tender, I participated in a telephone call with the Underwriters' counsel on the same day and explained that the Underwriters' pattern of delay was continuing to compromise Mr. Napout's defense in his criminal trial, as his criminal attorneys had been working without payment for several months.

15. On August 25, 2017, the Underwriters' counsel sent me an email stating that she was scheduled to speak with the Underwriters regarding status. A true and correct copy of the August 25, 2017 email exchange is attached as **Exhibit G**.

16. On September 8, 2017, I had to resend my July 11, 2017 email, because the Underwriters' counsel informed me, inexplicitly, that the Underwriters were still waiting on additional information to process some of the past defense costs. A true and correct copy of the email exchange is attached as **Exhibit H**.

17. On September 12, 2017, I sent an email to counsel for the Underwriters to once again follow-up on the status of the long-promised payments. The Underwriters' counsel responded to me by email on that same date asserting, for the first time, that the information provided on behalf of Mr. Napout two months earlier did not resolve the outstanding documentation requested in the Underwriters' June 29 correspondence and stated, once again, that the Underwriters were still working to process payment. I responded by asking why this was the first time I was hearing this, what exactly the Underwriters now required, how did this belated request hold up the other payments, and what the status was of the $1.25 million payment that was supposed to be provided two months prior. *See* Exhibit H.

18. On September 19, 2017, I provided the requested additional backup documentation from one of Mr. Napout's defense firms, Greenberg Traurig, from June to July 2017, to counsel for the Underwriters and once again demanded that the outstanding fees be paid immediately. True and correct copies of the September 19, 2017 emails are attached as **Group Exhibit I**.

19. On October 3, 2017, I emailed counsel for the Underwriters, noted that my emails and voicemail had gone unanswered, and asked whether the Underwriters would pay the outstanding defense fees due, or if instead, they preferred that Mr. Napout initiate a "third case enforcing the same policy language." The Underwriters' counsel responded that they "continue to review and approve further invoices in due course for payment." She once again stated that

her clients "confirmed that they are working on the outstanding payment." I responded by reminding her that while the Underwriters had made two payments totaling $2.25 million, these payments came "only after months and months of constant requests for same and continued excuses for the delay." A true and correct copy of my October 3, 2017 email exchange with counsel for the Underwriters is attached as **Exhibit J**.

20. The last email exchange with Underwriters' counsel was on October 26, 2017. Representations were made about recommendations for certain payments but no timeline for issuance of that payment was provided. A true and correct copy of the October 26, 2017 email is attached as **Exhibit K**.

21. Since accepting Mr. Napout's defense subject to a reservation of rights in March 2017, the Underwriters have paid only $2.25 million (in two separate payments) toward Mr. Napout's past defense fees. The Underwriters paid none of the defense fees incurred since March 2017, leaving well in excess of $5 million in legal defense costs outstanding. The most recent defense fee bill from September 2017, transmitted to the Underwriters on October 5, 2017, totals in excess of $500,000.

[*signature on following page*]

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 2nd day of November 2017, at Chicago, Illinois.

Signature: /s/ Rosa M. Tumialán

Name: Rosa M. Tumialán