UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------------- X

JUAN ANGEL NAPOUT,

                    Plaintiff,

     -against-

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON, AXIS SPECIALTY EUROPE SE,

                 Defendant.     X

---------------------------------------------------------------------------------

Case No. 17-cv-06394-PKC-SJB

# DEFENDANTS CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AND AXIS SPECIALTY, EUROPE SE'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION <u>REQUIRING DEFENDANTS TO PAY DEFENSE COSTS</u>

CLYDE & CO US LLP

Michael A. Knoerzer
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Tel: (212) 710-3900
Fax: (212) 710-3950

*Attorney for Defendants*

# PRELIMINARY STATEMENT

Defendants CERTAIN UNDERWRITERS AT LLOYD'S, LONDON ("Underwriters") and AXIS SPECIALTY EUROPE SE (together, "Defendants") respectfully submit this opposition to Plaintiff's order to show cause as so-ordered by the Court on November 3, 2017.

Plaintiff's self-serving one-sided narrative of the facts in this matter ignores a key fact which is fatal to his showing of irreparable harm: according to the parties' working agreement, Underwriters have paid and continue to pay Plaintiff's reasonable attorneys' fees and costs upon proper proof that such fees and costs relate to his defense and are within the Policy terms (most notably, a € 500 /hour cap on attorney time). Plaintiff has lived under this agreement for many months, during which Insurers have paid $2,250,000 and expect to pay another $964,000 in a matter of days, with more to follow according to the parties' agreed protocols.

This process has been working for quite some time. Nevertheless, Plaintiff has been unable to support by proper invoices or other documentation a significant amount of its fees – a fact which Plaintiff has never seriously denied during the ordinary course of business. Now, however, on the eve of his criminal trial, Plaintiff seeks emergency relief to undo the parties' working arrangement and obtain immediate reimbursement, without supporting proof and without regard to the Policy's €500 /hour rate cap. Plaintiff should not be permitted to use the emergency nature of this motion to sidestep its responsibility (a responsibility it has continually recognized) to provide support for its claims and to comply with the rate cap.

For these reasons, and the additional reasons set forth herein, Defendants respectfully request that Plaintiff's motion be denied and that further proceedings be scheduled so that the Court may see for itself that Plaintiff has been unable to substantiate its claims and that Plaintiff's claims are in part violative of the Policy hourly rate caps.

# FACTS

A. <u>The Policy</u>

Plaintiff commenced this action on November 2, 2017, alleging entitlement to coverage under Directors and Officers Legal Liability Insurance Policy number LI1413318000 (the "Policy"), which Underwriters issued to the Federation Internationale de Football Association ("FIFA"), as the Named Insured, effective 30 December 2014 to 30 December 2015. Plaintiff does not argue, and cannot argue, that he was in any way involved in the negotiation of the Policy terms or that he paid any portion of the premium for it.

While Plaintiff is arguably an "Insured Person" under the Policy, this does not mean that any defense costs incurred by Plaintiff are payable on demand. Instead, the Policy contemplates that the Insured Persons are entitled to choose a lawyer in consultation with Defendants, at a fixed hourly rate of no more than €500 net (unless Defendants agree to a higher rate), and that the Insured Person shall attempt to "minimise the loss and shall do everything possible to clarify the loss event." Policy at 2.2. In the case of Defense Costs, this means that Plaintiff must provide documentation to support its losses, which Plaintiff has in fact agreed to do. Despite the Policy terms and Plaintiff's agreement, Plaintiff does not, and cannot, contend that it chose its lawyers in consultation with Defendants, or that it consistently submitted invoices at a fixed hourly rate of no more than €500/hour, or that it has taken steps to "minimise the loss and shall do everything possible to clarify the loss event".

B. <u>The Parties' Working Agreement as Respects the Reimbursement of Plaintiff's Defense Costs</u>

Plaintiff submitted a claim for coverage under the Policy on or about May 9, 2016, after incurring over $2.2 million in legal fees and despite not consulting Defendants in selection of counsel as required under the Policy. On or about June 10, 2016, counsel wrote to Plaintiff's

defense counsel, reserving its rights and requesting more information to evaluate coverage.

In March 2017, after obtaining more information from Plaintiff, Defendants informed Plaintiff that Defendants would pay defense costs, subject to its reservation of rights and the terms of the Policy. At that time, Plaintiff submitted over $6 million in defense costs for payment dating back to May 2015, a year before providing notice to Defendants that it had hired counsel and was incurring enormous fees. During this time, Plaintiff's criminal defense counsel submitted several bills on a "for services rendered" basis, without meaningful (or in some cases, any) detail of the work done.

Since that time, as Plaintiff's Memorandum in Support makes abundantly clear, the parties have been involved in an agreed process by which Plaintiff's defense attorneys submit invoices and supporting documentation for expenses. These documents are in turn to be reviewed by Defendants in order to determine whether the work being performed was covered under the Policy and to apply the €500 rate cap on fees. Once such determinations are made as to covered amounts, Defendants (who are comprised of Lloyd's syndicates and one London Market insurance company) deposit funds with the Lead Underwriter, who in turn transfers the funds to Defendants' counsel for deposit to an account designated by Plaintiff.

Plaintiff has certainly groused during this entire process, challenging many of (but ultimately accepting) Defendant's coverage decisions and complaining about the time necessary for Defendants to make its determinations and to marshal the funds from the various Lloyd's syndicates in order to make payment. Despite this grousing, at no time did Plaintiff question his obligation to support his claims before reimbursement could be made. Nor did Plaintiff deny that Defendants were entitled to a reasonable period of review of Plaintiff's submissions. Furthermore, at no time over the last 18 months since Plaintiff first made his claim for

reimbursement of defense costs did he commence court action in order to challenge his obligation to provide support for reimbursed fees and costs, or challenge the manner and time frame by which Defendants conducted their review process and collected funds for payment.

    C.    <u>Payments by Defendants</u>

Pursuant to this working agreement, Defendants have at this writing already reimbursed Plaintiff for $2,250,000 in defense fees for those invoices and those costs which have been adequately documented. Moreover, Defendants intend to make another payment to Plaintiff on or about November 10, 2017 for another $964,000 in covered costs. Defendants further anticipate paying approximately another $1.3 million in covered costs in December 2017. Thus, Underwriters have paid and continue to pay the amounts it is obligated to pay upon receipt of proper support—which will amount to approximately $4.5 million of Plaintiff's defense costs.

What Plaintiff fails to disclose to the Court when seeking the Court's relief for this alleged "irreparable harm" is that, despite Defendants' repeated requests for additional information since these invoices were submitted, Plaintiff has repeatedly failed to provide necessary documentation to show that certain claimed defense costs are: (1) covered loss; (2) not in excess of the Policy's rate cap; and (3) reasonable.

For example, Plaintiff submitted over $2.6 million in defense costs from Plaintiff's defense counsel Greenberg Traurig that are in pro forma, draft, unfinished form and have inconsistent billing rates and calculated amounts and dates that make it impossible for Defendants to determine the actual amount billed and reimbursable. Plaintiff submitted over $415,000 in defense costs from the Esteban Burt firm which provide only the purported amounts due, but no actual invoices to support the work performed or the rates charged. Additionally, prior even alerting Defendants to the fact that defense counsel were hired, certain defense

counsel were earning fees for which they invoiced Plaintiff on a flat-fee schedule, which makes it impossible for Defendants to properly apply the rate cap and to determine whether the work performed constitutes covered loss. There are other instances of insufficient documentation throughout Plaintiff's submissions.

Counsel for Defendants have repeatedly advised Napout's insurance coverage counsel of these issues. However, Plaintiff, instead of curing significant portions of this lack of documentation,[1] has elected to seek emergency relief in an attempt to avoid supporting its claims. For the reasons set forth below, Plaintiff should not be permitted to use the emergency nature of this proceeding to short circuit his obligation to substantiate its claims – an obligation he has recognized and accepted for more than a year.

## **DISCUSSION**

Plaintiff fails to demonstrate the risk of irreparable harm. In the Second Circuit, "[a] preliminary injunction is an extraordinary remedy never awarded as of right." *Salinger v. Colting*, 607 F.3d 68, 79 (2d Cir. 2010) (citing *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008)). A preliminary injunction is "one of the most drastic tools in the arsenal of judicial remedies." *Grand River Enter. Six. Nations Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (citation omitted). Thus, a party seeking a preliminary injunction bears a high burden, and must show: "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 476 (2d Cir. 2004).

Moreover, "where a party seeks a mandatory injunction that requires the defendant to

---

[1] Defendants note that with respect to certain items, such as expense back-up documentation, after repeated requests, Plaintiff did provide the requested information, at which time Defendants reviewed those amounts and submitted them for payment.

affirmatively act" – as Plaintiff does here – the burden is higher and an injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Stuckey v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 131 F.Supp.3d 73, 83 (S.D.N.Y. 2015) (internal citations omitted).

Under this heightened standard, the Court's order to show cause correctly identifies two key issues in this matter: (1) how Plaintiff has suffered irreparable harm and (2) why the Plaintiff unduly delayed seeking injunctive relief. Defendants address each of these issues below, along with other material issues relevant to Plaintiff's emergency motion.

A.  <u>Plaintiff has not suffered irreparable harm</u>.

Although Plaintiff declares on multiple occasions that he is suffering irreparable harm, he offers not a whit of evidence to support it. Plaintiff does not, and cannot, contend that his attorneys – who have already received a very substantial $2.25 million to date and will receive another $964,000 in a matter of days – are threatening to quit his representation on the eve of his criminal trial. Nor does Plaintiff identify any way in which either the effort or effectiveness of his attorneys has been affected by adherence to the working agreement for reimbursement which has been agreed by Plaintiff's coverage counsel. Plaintiff offers absolutely no evidence whatsoever of any irreparable harm.

Plaintiff's reliance on the *Li* and *Rocha* cases (for the proposition that irreparable harm may be presumed) are distinguishable. *First*, unlike this case, in *Li* and *Rocha* Defendants were originally denying that they had any obligation to pay defense costs and therefore their defense lawyers were receiving no fees whatsoever. That is not the case with respect to Plaintiff's defense counsel, who has received $2.25 million which will soon be increased to over $3.2

million and shortly thereafter approximately $4.5 million. *Second*, Messrs. Li and Rocha pled indigence and an inability to fund their defense themselves. On the other hand, Mr. Napout has been described as "fabulously wealthy" and apparently has enough funds to have posted a $20 million bond with the Court. *See, e.g., Stuckey*, 131 F. Supp.3d at 85 ("But Plaintiff offers no evidence that he is unable to continue paying counsel, nor does he identify any prospect that he will 'suddenly' become unable to do so. The potential harm he identifies is too speculative to justify the drastic remedy of injunctive relief."). *Third*, unlike in *Li* and *Rocha*, in this case Plaintiff and Defendants have a working agreement whereby they operate on the basis that supporting documentation must be submitted, reviewed and approved before payment. If this is irreparable harm (and Defendants say it is not) Plaintiff agreed to it long ago.

Further, if Plaintiff succeeds on the remaining fee issues, the appropriate remedy is an easily calculable monetary damages award—the difference in the amount of defense costs Defendants have already paid and the remaining amounts Plaintiff seeks for Underwriters to pay that the Court determines are covered. "[W]hen a party can be fully compensated for financial loss by a money judgment, there is simply no compelling reason why the extraordinary equitable remedy of a preliminary injunction should be granted." *Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir. 1991). *See also JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990) ("irreparable injury is one that cannot be redressed through a monetary award. Where money damages are adequate compensation a preliminary injunction should not issue.").

In the absence of any actual evidence that Plaintiff is suffering irreparable harm, his motion for emergency relief must be denied.

B. <u>If Plaintiff was truly being irreparably harmed, then he unduly delayed bringing this motion</u>.

The cases cited in the Court's order to show cause stand for the proposition that the Court

should consider delay in bringing the preliminary injunction motion in determining whether irreparable harm truly exists. *Insurance Company of Pa v. Lakeshore Toltest JV, LLC*, 2015 WL 8488579 at *3 (S.D.N.Y. Nov. 30, 2015) ("A district court should generally consider delay in assessing irreparable harm.") (quoting *Tom Doherty Assocs., Inc. v. Saban Entertainment Inc.*, 60 F.3d 27, 39 (2d Cir. 1995)).

This well-settled legal proposition is particularly relevant in this case as all the facts Plaintiff is complaining of have existed (as Plaintiff admits) for at least several months if not longer. From pages 8 to 12 in his Memorandum, Plaintiff describes a long history of Defendants' alleged delay and misconduct in reimbursing his defense costs, dating back to mid-2016. Defendants deny the truth of Plaintiff's self-serving narrative, but for the purpose of this emergency motion what is relevant is not whether these allegations are true (such facts to be addressed at an evidentiary hearing if it comes to that), but whether Plaintiff's admitted 12 to 18 month delay undermines his argument that he is suffering irreparable harm.

If Plaintiff's arguments about Defendants' misconduct and delay are to be believed (and Defendants deny it), then Plaintiff has been suffering irreparable harm since mid-2016. Indeed, the only remaining amounts in dispute that Defendants are not in the process of paying are those amounts originally submitted which Plaintiff cannot document or otherwise support. Plaintiff cannot square his long delay in seeking judicial relief with his contention that he was suffering irreparable harm. Plaintiff's motion should be denied due to inexcusable delay which belies his contention that he is suffering irreparable harm.

C. <u>The balance of equities favors Defendants.</u>

This is not a case where Defendants are not paying any of Plaintiff's legal fees. Under New York law, injunctive relief is simply improper when an insurer pays covered amounts but

refuses to pay unsupported amounts. *See, e.g.*, *Stuckey*, 131 F.Supp.3d 73 (distinguishing injunctive relief in the event of a disputed coverage denial from injunctive relief in the case of a dispute over certain covered defense costs). His attorneys' defense costs are being paid in the manner agreed by the parties and required by the Policy. Plaintiff offers no evidence whatsoever that the defense his attorneys are providing has in any way been curtailed or prejudiced. Indeed, millions have been spent and reimbursed for his defense.

On the other hand, Defendants' right to consult with Plaintiff on selection of counsel was ignored by Plaintiff. If Plaintiff is granted the relief he requests – that past unsupported flat fee invoices be ordered to be reimbursed within 10 days and that future invoices be reimbursed (whether or not documentation is provided establishing coverage) be paid immediately, Defendants will be denied the benefit of their bargain as contained in the Policy. Plaintiff, on the other hand, had no role in negotiation of (or payment for) the Policy and cannot argue that he had any expectations other than that his defense costs would be reimbursed as they have been.

The opportunity to review supporting documentation has been very important to Defendants because significant portions of the invoices submitted by Plaintiff have not been appropriate and were clearly not covered. Far from challenging these coverage determinations, Plaintiff has acknowledged Defendants' objections to certain invoices and accepted reimbursement according to Defendants' determinations.

If Defendant is now ordered to immediately pay any funds requested by Plaintiff, not only would this constitute a breach of the parties' mutual understanding of the Policy, but would likely prejudice Defendants because it would result in payment of non-covered fees which Defendants would have no realistic possibility of ever recovering, including amounts in excess of the Policy's €500/hour rate cap. Indeed, it is extremely telling, that Plaintiff has never attempted

to provide suitable support for the first several million in fees claimed. For these reasons, the balance of equities tilts in favor of Defendants and they should not be required to pay unsupported invoices on an emergent basis, or to pay invoices "immediately" without regard to analysis of coverage.

        D.      <u>If the Court orders emergency relief, then Plaintiff should be Required to Post a Bond</u>.

A party seeking injunctive relief must also prove a likelihood of success on the merits. In cases such as the present, where Plaintiff seeks an injunction that will be mandatory, "i.e. will alter rather than maintain the status quo" or will provide the movant "with substantially all the relief sought, and that relief cannot be undone even if the defendant prevails at a trial on the merits," Plaintiff must "make a clear or substantial showing of a likelihood of success." *Brewer v. W. Irondequoit Cent. Sch. Dist.*, 212 F.3d 738, 744 (2d Cir. 2000).

Here, Plaintiff's request for injunction fails to meet both of these elements requiring a heightened standard of proof. Except for those invoices which are currently in the process of being paid (roughly $2 million), most of the invoices for which Plaintiff seeks judicial relief relate to insufficiently substantiated or undocumented legal fees and costs, for which Plaintiff has not sufficiently established a right to recoupment. Plaintiff further has not established that it should be entitled to those amounts in excess of the rate cap. "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Reasonableness is determined based on the amount of attorney hours usefully and reasonably expended in connection with the matter. *Blanchard v. Bergeron*, 489 U.S.87, 93 (1989). Documents presented by the movant must provide a detailed and specific record of the work that was undertaken. *Rourke v. N.Y. York State Dep't of Corr. Servs.*, 666 N.Y.S.2d 765 (N.Y.App.Div.1997).

Plaintiff has long had the opportunity to provide support for these invoices, but apparently is unable to provide such support. Plaintiff's emergency motion is merely an end run around its obligation to provide documentation to support its claims for reimbursement and to bypass the Policy's rate cap and reasonableness requirement. If it later is established that Plaintiff's claims for reimbursement are unproven, Defendants will have little chance to recover their funds from Plaintiff, whose assets exist entirely outside of the United States.

Defendants therefore respectfully request that if the Court orders the emergency payment of all outstanding fees claimed, the Court should also order that Plaintiff simultaneously post a bond in the same amount of those fees. Only in this way can Defendants be protected against what is plainly a case of a Plaintiff who is unable to provide proof that his claims are covered under the Policy. Subsequently, the Court can hold a hearing if necessary (ideally, Plaintiff would submit his proofs and Defendants would agree covered amounts based on those proofs and a hearing could be avoided). After that hearing, the Court could rule on coverage issues and release the bond according to its determination.

## **CONCLUSION**

For the foregoing reasons, Underwriters respectfully request that this Court deny Plaintiff's motion for a preliminary injunction.

Dated: New York, New York
November 7, 2017

                                                Respectfully submitted,

By:   /s/ *Michael A. Knoerzer*
      Michael A. Knoerzer

      Clyde & Co US LLP
      The Chrysler Building
      405 Lexington Avenue
      New York, New York 10174
      Tel: (212) 710-3900

Fax: (212) 710-3950

*Attorney for Defendants*